FILED
DEC 0 8 2020

CLERK

UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

NORTHERN DIVISION

| UNITED STATES OF AMERICA, | 1:18-CR-10006-CBK |
|---|---|
| Plaintiff, | |
| | ORDER |
| vs. | |
| JOSHUA NOEL PAUL, | |
| Defendant. | |

Defendant was charged with conspiracy to distribute a controlled substance – methamphetamine, possession of a firearm during a drug trafficking crime, possession with intent to distribute a controlled substance – methamphetamine, and possession of a firearm by a prohibited person – he being a felon and an unlawful user of or one addicted to a controlled substance. Pursuant to a plea agreement, defendant waived indictment and pleaded guilty to a superseding information charging conspiracy to distribute a controlled substance and possession of a firearm during a drug trafficking crime. The drug charge carried a mandatory minimum penalty of ten years imprisonment and the firearm charge carried a mandatory consecutive minimum penalty of five years imprisonment. Defendant was sentenced on June 3, 2019, to 151 months on the conspiracy charge to run consecutive to 60 months on the firearm charge, for a total sentence of 211 months. Defendant appealed his sentences to the United States Court of Appeals for the Eighth Circuit, arguing that his sentences, which were at the bottom of the guideline range, were substantially unreasonable. The Eighth Circuit affirmed. United States v. Paul, 814 F. App'x 182, 183 (8th Cir. July 31, 2020).

While his case was still on appeal, defendant filed a motion for compassionate release. The Bureau of Prisons ("BOP") has calculated defendant's current release date as February 23, 2033. https://www.bop.gov/inmateloc/ visited December 7, 2020.

The Sentencing Reform Act of 1984, Pub. L. 98-473, Title II, § 212, authorized, *inter alia*, the district court, upon motion of the Director of the BOP, to reduce a prison term after considering the factors set forth in 18 U.S.C. § 3553(a), "if it finds that extraordinary and compelling reasons warrant such a reduction and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). The Sentencing Commission issued Guidelines § 1B1.13 setting forth the Commission's policy statement on compassionate release, which were consistent with § 3582(c).

Pursuant to the First Step Act of 2018, the district court is now authorized to grant compassionate release upon motion of a defendant after the exhaustion of administrative remedies. Pub. L. 115-391, § 603(b), 18 U.S.C. § 3582(c)(1)(A). The government does not contend that defendant has failed to exhaust his administrative remedies.

In evaluating a request for compassionate release, the district court is required to consider the factors set forth in section 3553(a), to the extent that they are applicable, and may reduce defendant's sentence of imprisonment if it finds that

(1)  (a) extraordinary and compelling reasons warrant such a reduction, or

(b) the defendant is at least 70 years of age and has served at least 30 years in prison for the offense or offenses for which the defendant is currently imprisoned

and

(2)  the defendant is not a danger to the safety of any other person or the community.

18 U.S.C. § 3582(c)(1)(A), U.S.S.G. § 1B1.13.

Defendant requests compassionate release based upon his medical conditions, including a history of hypertension and obesity, and the fact that COVID 19 is wide-spread in the BOP system. Chief Judge Lange has observed:

> There can be no doubt that the effects of the global COVID-19 pandemic are extraordinary, and that the disease in some situations may be an "other reason" to grant compassionate release under § 1B1.13 comment note (D). The illness and the potential for its spread has affected the daily life of nearly every American citizen and has resulted in massive disruptions to the economy. Despite these drastic effects, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread." The question

> becomes whether [defendant's] medical conditions . . . combined with the crowded conditions of confinement justify compassionate release.

United States v. Frost, 2020 WL 3869294, at *4 (D.S.D. July 9, 2020) *citing* United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020).

Defendant is 39 years old. Defendant is not currently receiving treatment for any acute condition. He has been taking regular medication for hypertension, a condition he has had for many years. He claims to have "a weak heart" but a September 2019, record shows that he had no acute cardiopulmonary issues. He also claims he has diabetes but no medical record reflects that diagnosis. Defendant was 6' tall and weighed 255 lbs. in September 2019, but there is no record that he has sought treatment for obesity. He has been advised to lose weight to treat his hypertension. Other than medication refills, defendant has had no medical visits during his last year in custody. Having obesity does place a person at a higher risk for death or serious complications from COVID-19.

Defendant requests immediate release. His request amounts to a request for re-sentencing to a term of time served. Prior to sentencing, he served approximately 14 months. Since sentencing, he has served 18 additional months. He has thus served a total of 32 months of his 211 months sentence, just 15 % of the sentence I imposed.

Defendant has proposed that he be released to reside with his sister Nenette Nieves in Sparks, Colorado. Defendant, at the time of his arrest in the District of South Dakota, claimed his address was Florence, Oregon. More specifically, that is where his mother resides. Defendant claimed during the presentence interview that he resided most of this life in San Diego, California. In April 2017, he was residing in Watertown, South Dakota, and continued to reside there until his arrest in March 2018 in this case. During the presentence interview, defendant did not identify any sister named Nenette or any relative who lived in Colorado. In any event, release to a district other than South Dakota would require the agreement of the United States Probation and Pretrial Services office in the District of Colorado and the assent of a federal judge in the District of Colorado. Federal defendants are not entitled to be released to the district of their choice. Ordinarily they are released to the district from which they were sentenced.

Defendant is housed at the FCI Sheridan in Sheridan Oregon. That institution currently has two inmate confirmed cases of COVID-19. https://www.bop.gov/ coronavirus/, visited

3

December 7, 2020. There have only ever been 8 inmate cases at Sheridan FCI, with six inmates having recovered. *Id.* There have been no inmate deaths at that facility. FCI Sheridan houses 1,113 inmates. The level of COVID-19 infections in that facility is remarkably low.

South Dakota, on the other hand, currently has the highest average per capita cases during the last seven days and the highest average per capita deaths during the last seven days in the nation. https://covid.cdc.gov/covid-data-tracker/#cases_casesper100klast7days visited December 4, 2020. South Dakota in now ranked as the riskiest state to visit by the Harvard-Brown risk assessment tool. Kelleher, Suzanne Rowan. "Covid-19 Alert: The 10 Riskiest States to Visit a Week After Thanksgiving, Ranked." Forbes, December 5, 2020. uhttps://www.forbes.com/sites/suzannerowankelleher/2020/12/05/covid-19-alert-the-10-riskiest-states-to-visit-a-week-after-thanksgiving-ranked/?sh=6c0a1b2d6bb2 visited December 7, 2020. South Dakota's risk level is 366% above the threshold for being considered "at a tipping point." *Id.* The risk of infection for one residing in South Dakota is now apparently higher than the risk of one residing at FCI Sheridan.

South Dakota has done little, if anything, to curtail the spread of the virus. The annual motorcycle rally this summer in Sturgis, South Dakota, was a virus "spreader." The Governor has steadfastly refused to impose a statewide mask mandate. She has often questioned publicly the scientific fact that mask wearing prevents the virus from spreading. She appeared at a dedication ceremony for a large 3M Company manufacturing plant expansion – to allow 3M to produce even more N95 respirators needed by front-line healthcare workers – as the only public official not wearing a mask. Her example significantly encourages South Dakotans to not wear masks. South Dakota is a very dangerous place in which to live and the extent of the spread of COVID-19 proves it.

I reject defendant's claim that he is entitled to compassionate release. I find that the COVID-19 public health emergency does not warrant defendant's release. Defendant is currently at no greater risk residing at FCI Sheridan than he is being released back to the District of South Dakota.

I further reject defendant's claim that he is entitled to compassionate release because I specifically find that his earlier release is not in the interests of justice. Defendant, a gang member from San Diego, California, moved to Watertown, South Dakota, in 2017. He brought three pounds of methamphetamine from California which he distributed in South Dakota through

4

a conspiracy in which he held a leadership role. While residing in Watertown, he made additional trips to California to bring back more methamphetamine for sale. He was arrested in February 2018, following a traffic stop on the Standing Rock Indian Reservation on his way back from California. When arrested, he was in a car with six pounds of methamphetamine and a 9mm pistol." United States v. Paul, *supra*. Defendant was on his way back from California with his co-defendant, who one of the co-conspirators described as defendant's "bill collector." In total, 3,606.56 grams of methamphetamine were attributed to defendant for the purposes of calculating the offense level. Although other quantities could have been attributed to defendant, Probation calculated drug quantity in a light most favorable to the defendant. Defendant's drug conspiracy involved in excess of 3.6 KG of methamphetamine, over seven times the quantity needed to invoke the ten-year mandatory minimum penalty set forth in 21 U.S.C. § 841(b)(1)(A). While he was detained pending sentencing, defendant assaulted his cellmate, causing two breaks to the cell-mate's jaw requiring surgical repair, for the offense of accidentally splashing water on the defendant.

Defendant's motion for compassionate release suggests that he should be sentenced to time served, only 15% of the penalty imposed for conspiracy to distribute methamphetamine in South Dakota. He also claims his release plan is to reside with a sister who lives in the District of Colorado. Defendant never identified this person as a family member during his presentence interview. His proposed release plan is dubious at best.

I have considered the motion and briefs, defendant's medical records, and the entire file, including the presentence report. I have also considered all of the statutory factors set forth in 18 U.S.C. §3553(a), which weigh heavily against the release of the defendant.

Now, therefore,

IT IS ORDERED that defendant's motion, Doc. 132, for compassionate release is denied.

DATED this 8th day of December, 2020.

BY THE COURT:

CHARLES B. KORNMANN
United States District Judge

5